UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JUAN PÉREZ, | ) | |
| Petitioner, | ) | |
| v. | ) | 2:26-cv-00573-SDN |
| DAVID WESLING, et al., | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

This matter comes before the Court on Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1. The Court has reviewed the parties' submissions, the record, and the relevant law. For the reasons set forth below, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner is a citizen of Ecuador who entered the United States on or about November 2024 at the age of sixteen. ECF No. 1 at 4 ¶ 17. Upon entry as an unaccompanied child, Petitioner was placed in the custody of the Office of Refugee Resettlement ("ORR"). ECF No. 3 at 4 ¶ 19. On November 15, 2024, the ORR released Petitioner from custody to a sponsor, his brother, who lived in Rhode Island at the time. ECF No. 3 at 4 ¶ 20, ECF No. 1-2. In June 2025, Petitioner graduated high school. ECF No. 1 at 4 ¶ 24. On November 20, 2025, Petitioner received I-360 Special Immigrant Juvenile ("SIJ") certification after a Massachusetts state court judge found that his father neglected and abused him. *Id.* 4 ¶¶ 22–23, ECF Nos. 1-1 & 1-3.

On November 16, 2026, immigration officials stopped a vehicle in Maine in which Petitioner was a passenger. ECF No. 1 at 5 ¶ 26; ECF No. 8 at 2. Petitioner called his brother, who spoke to an ICE agent over the phone and told the agent that Petitioner has SIJ certification. ECF No. 1 at 5 ¶ 27. The ICE agent told Petitioner's brother that Petitioner was not in removal proceedings. *Id.* Immigration officials nonetheless detained Petitioner without a warrant. *Id.* at 13 ¶ 69.

On November 16, 2026, Petitioner filed his petition, alleging violations of federal statutes governing the release of unaccompanied noncitizen children (Count One), his Fifth Amendment substantive and procedural due process rights (Counts Two and Three), the statutory and regulatory requirements governing warrantless arrest and detention under 8 U.S.C. § 1226 as well as his rights as a *Guerrero Orellana v. Moniz* class member (Counts Four and Five). ECF No. 1 at 7–15. Among other forms of relief, petitioner asks that the Court order his immediate release. *See id.* at 15.

## II. Analysis

This Court has jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A district court may grant a writ of habeas corpus to a petitioner who demonstrates that they are in "custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

### A. Statutory Framework

Respondents do not contest that 8 U.S.C. § 1226(a) governs Petitioner's detention, ECF No. 6 at 2, nor do they contest that Petitioner belongs to the certified class in *Guerrero Orellana v. Moniz*, No. 25-cv-12664 (D. Mass.), aff'd, Nos. 25-2152, 26-1094, 2026 WL 2352042 (1st Cir. Aug. 13, 2026). *Id.*

Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The statute permits, but does not require, detention pending removal proceedings, and it permits release on bond or conditional parole. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Under the implementing regulations, ICE must first make an initial custody determination, 8 C.F.R. § 236.1(c)(8), which an immigration judge may later review, *id.* § 1236.1(d)(1). This framework "leaves no doubt that ICE must make a meaningful individualized custody determination in the first instance." *A.J.P.S. v. Benzel*, 2026 WL 3131270, at *4 (D.N.J. Oct. 19, 2026); *accord Ramirez-Ruiz v. Lowe*, 2026 WL 3373189, at *5 (M.D. Pa. Nov. 6, 2026).

**B. The Fifth Amendment**

The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment," including civil immigration detention, lies at the core of the liberty interest the Due Process Clause. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Government may not detain a noncitizen absent procedures sufficient to guard against the erroneous deprivation of that liberty. *See Hernandez Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021). To determine what process is due, the Court weighs three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used, and the probable value of additional safeguards; and (3) the Government's interest, including the burdens any additional procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The first *Mathews* factor weighs heavily in Petitioner's favor. He asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the]

government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). For approximately two years after ORR released him, Petitioner lived openly in the United States. During that time, he complied with the conditions of his release, graduated from high school, and committed no crime. Even more significant, he obtained SIJ classification, a humanitarian immigration protection program Congress created for young people who have suffered parental abuse, neglect, or abandonment and for whom a state court has found it would not be in their best interest to be returned to their country of origin. *See* 8 U.S.C. § 1255(a), (h)(1); Special Immigrant Status, 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993). Congress offered such children a path to lawful status, and a state court found that Petitioner qualifies for it. Respondents seized him anyway. They did so without first determining that circumstances had materially changed since his release, and without finding that he now posed a danger to the community or a risk of flight. The liberty interest is at its zenith when the Government provides no process before it takes a person's freedom.

The second *Mathews* factor, erroneous deprivation, also favors Petitioner. Respondents afforded him no process before detaining him, and that omission makes both the risk of erroneous deprivation and the value of additional procedures especially high. *See Mathews*, 424 U.S. at 343. Respondents have offered no evidence that Petitioner is a flight risk or a danger, and no one made that determination before he was seized.

To be sure, Respondents contend otherwise, asserting in conclusory form that they "have hewed closely to the arrest and detention process established by the INA and its implementing regulations." ECF No. 6 at 5. The record refutes that assertion. The Report of Apprehension or Seizure, ECF No. 7-1 at 5, shows only that a Border Patrol agent chose to detain Petitioner (and did having been told his SIJ status), along with the other individuals. It records no reasoning, identifies no factors, and reflects no individualized

assessment. Respondents point to no suggestion of dangerousness or flight risk, and the record contains none. Nor can Respondents rest on a warrant. Petitioner was arrested at approximately 8:00 a.m. on November 16, 2026. ECF No. 7-4 at 3. The I-200 bears the same date but no time of issuance, and Respondents offer no evidence that it preceded the arrest. ECF No. 6 at 4; ECF No. 7. That gap is material. The Border Patrol agent stopped a van because, in his experience, such vehicles "often transport" noncitizens, and he arrested all passengers. ECF No. 7-4 at 3–5. Petitioner was not a pre-identified target, so no warrant could have been issued as to him after individualized consideration.

Where the Government cannot show that a warrant preceded the arrest, the Court treats the arrest as warrantless. A warrantless arrest is lawful only within the narrow exceptions of 8 U.S.C. § 1357(a)(2) and (a)(5), which require, among other things, reason to believe the person is likely to escape before a warrant can be obtained. Those exceptions are "strictly limited, particularly in the interior-arrest context." *Morelos Valdovinos v. Noem*, 2026 WL 948285, at 5 (D.N.M. Apr. 8, 2026). Respondents invoke neither, and the record would not support them. Courts confronting an untimed, same-day, I-200 have refused to treat it as a § 1226(a) warrant. See *Lazarte v. Venturella*, 2026 WL 2581945, at 3 (N.D.N.Y. Sept. 1, 2026); *Petit v. Blanche*, 2026 WL 2858601, at 1 (D. Colo. Sept. 23, 2026); *Jorge A.-G. v. Bondi*, 2026 WL 444682, at *2 (D. Minn. Feb. 17, 2026) (ordering release); *J.G.M. v. Wesling*, No. 2:26-cv-00455 (D. Me. Sep. 15, 2026).

The Constitution does not permit the deprivation of liberty by default. Officers encountered a teenager they were told held SIJ certification. That certification reflects a state court's finding that he was abused and neglected, and that Congress had provided him a pathway toward lawful status. They also knew that no removal proceedings were pending against him. Nevertheless, they detained him without an individualized

assessment and without justification. Due process demands an exercise of reasoned judgment before liberty is taken, not after.

The third *Mathews* factor does not help Respondents**.** The Government has a legitimate interest in effectuating removal orders, ensuring that noncitizens appear for removal, and protecting the community. *Zadvydas*, 533 U.S. at 690–91. However, Respondents have not explained how these interests required detaining Petitioner without the statutorily required steps. Petitioner has lived for several years at an address known to Respondents, and his SIJ classification gives him a path to permanent residence and, eventually, citizenship. Respondents have not identified any significant fiscal or administrative burden in affording Petitioner a modest amount of process.

**III. Conclusion**

Accordingly, the Court **GRANTS** the Petitioner's habeas petition and **ORDERS** the following**:**

- Respondents **SHALL** release Petitioner by **10:00 am on November 19, 2026,** without any additional conditions or restraints beyond any that may have existed before Petitioner's unlawful detention;
- Respondents **SHALL** return all of Petitioner's personal belongings;
- Respondents **SHALL NOT** re-detain Petitioner absent materially changed circumstances and without adequate notice and a pre-deprivation hearing before a neutral immigration judge, at which the Government must prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. *Hernandez Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021).
    a. Any such hearing shall occur no earlier than 30 days from this Order, unless Petitioner consents otherwise.

- Respondents **SHALL** file a status report within 45 days of this Order detailing whether the Petitioner has had such a hearing and, if so, whether Petitioner has been granted bond, the amount of that bond, whether Petitioner paid the bond, and if denied bond, the reasons for that denial.

The Court reserves ruling on Petitioner's request for fees and costs under the Equal Access to Justice Act pending submission of a fee petition. The record does not reflect that Respondents have assessed any immigration civil penalties against Petitioner, as such that request is dismissed without prejudice; Petitioner may seek appropriate relief if and when such penalties are imposed.

**SO ORDERED.**

Dated this 18th day of November, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**